UNITED STATE DISTRICT COURT, D. Massachusetts

| | | |
|---|---|---|
| Rimma Vaks, | I | |
| Plaintiff, | I | |
| | I | |
| v. | I | Civil Action No.: |
| | I | |
| Bose Corporation, | I | 1:16-cv-11902 V β̅ S̅ |
| Mike Derrenberger, | I | |
| Peter Altieri, | I | |
| Kathleen O'Neill | I | |
| Defendants | I | |
| | I | |

## FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, Rimma Vaks, and files this amended complaint "as a matter of course" pursuant to FCRP 15(a)(1)(B) after defendants filed their Partial Motion to Dismiss against Bose Corporation, Mike Derrenberger, Peter Altieri and Kathleen O'Neill .

## NATURE OF THE ACTION

1. This is an action for gender and age based employment discrimination in Violation of Massachusetts General Laws, chapter 151B, Age Discrimination in Employment Act of 1967, as amended, hereinafter the "ADEA", Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. While employed by Bose Corporation, Plaintiff, Ms. Vaks, was continuously subjected to gender and age based discrimination and organized hostile environment by her supervisor, Mr. Derrenberger, in terms or conditions of her employment and opposed her selective treatment, was suffered adverse actions and was retaliated against in further violation of the aforementioned statutes.

1

2.    Ms. Vaks has suffered gender-aged-based selective treatment and the adverse impact of policies and practices regarding compensation, promotional opportunities, and other terms and conditions of her employment. The disparate treatment directed toward Ms. Vaks increased as she succeeded at her work responsibilities.

3.    This complaint arises out of illegal pattern and practices of aiding and abetting discrimination and retaliation that followed Ms. Vaks complained of the discrimination.

4.    Ms. Vaks has exhausted EEOC administrative remedies.

## SUMMARY OF THE CASE

5.    During her employment at Bose, on three separate occasions, Ms. Vaks had turned to Bose's HR for help to stop her workplace harassment, which Mr. Derrenberger, the Director of Software Engineering, directly instigated, orchestrated and oversaw. On these 3 occasions, Bose's HR failed to remedy conditions of Ms. Vaks employment. Bose's HR failed to conduct fair and independent investigations after Mr. Derrenberger interposed himself into investigations. He coerced Bose's investigators to turn each of their investigations against Ms. Vaks. Before finally firing her for complaining about the ongoing harassment and the hostile environment, Mr. Derrenberger threatened her with termination if she ever complained again. In the end, the Human Resources Managers, Peter Altieri and Kathy O'Neill, Bose's agents on behalf of defendant Bose, after witnessing that Michael Derrenberger condemned Ms. Vaks declaring that he would not tolerate discriminations complaints in "his organizations" that implicated "his manager" in "evil" and "criminal intent" and in spite of known numerous violations of Bose's policies, State, and Federal laws, surrendered to Mr. Derrenberger's retaliatory recommendation and fired Ms. Vaks.

2

## PARTIES

6.  Plaintiff, Rimma Vaks, is a resident of the State of Massachusetts, with an address of 103 Puritan Lane, Swampscott, MA 01907. She was employed by the Defendant, Bose Corporation, from March 21, 2011 until January 4, 2013.

7.  Defendant, Bose Corporation, is an employer within the meaning of 42 U.S.C.A. § 2000e-(b), has a principal place of business at 100 Mountain Av., Framingham, MA 01701.

8.  Defendant, Michael Derrenberger, is a resident of Washington State, with an address 102 Timber Ridge Drive, Port Ludlow, WA 98365, was a director of Software Engineering in Bose Corporation from January 2006 until September 2014, and was an employer within the meaning of 42 U.S.C.A. § 2000e-(b).

9.  Defendant, Peter Altieri, is a resident of Massachusetts, with an address 89 Krysiak Ave, Fitchburg, MA 01420, and was an employer within the meaning of 42 U.S.C.A. § 2000e-(b). He was a Human Resource Manager, the lead investigator of Ms. Vaks' internal discrimination complaint and a Bose's agent who terminated Ms. Vaks. His job responsibilities included, but not limited to supervising "employment policies, specifically mediation, performance management, staff reductions, internal investigations" for Bose.

10. Defendant, Kathy O'Neill, is a resident of Massachusetts, with the address 25 Lamplighter Dr. Shrewsbury, MA 01545, and was an employer within the meaning of 42 U.S.C.A. § 2000e-(b). She was a Human Resource Manager, a HR investigator of Ms. Vaks' internal discrimination complaint, and acted as Bose's agent who terminated Ms. Vaks. Her job responsibilities included, but not limited to supervising employment policies, specifically mediation, performance management, staff reductions, internal investigations for Bose

3

Corp.

## FACTS

11.  Ms. Vaks began her employment at Bose Corporation on March 21, 2011 as a Senior Software Process/Quality Engineer (SQE) (Level IV) in Bose's Home Entertainment Product Division (HEPD).

12.  She was hired by and reported to Richard Kunin, the SQE Manager II. The "incumbent's role will be to mentor engineering teams in the effective and efficient application of Bose software processes" and "[w]working closely with functional management, team leads, and other stakeholders, you will be a leader and change agent in bringing in and adapting current best practices into the Home Entertainment Division".

13.  The job required Ms. Vaks to regularly interact and influence a large number of people, including directors, managers, team leads, engineers, and many other stakeholders across multiple functional groups and projects.

14.  In 2011, when Ms. Vaks joined Bose's there were only 2-3 female employees in the entire Software Engineering Division of the Home Entertainment Product Development(HEPD).

15.  Ms. Vaks responsibilities included among others to implement Agile Processes and Policies on a new Ecosystem Program, manage this Program as both the Enterprise and Project level Scrum Master, facilitate all Program and Projects meetings, evaluate and improve software development and quality processes; and maintain and support of the planning, defect tracking and development tools.

16.  Prior to Ms. Vaks' hiring, Mr. Kunin was demoted for his numerous conflicts he created within the company. He was assigned to regularly scheduled coaching sessions with Human

4

Resources, but retained his managerial position in Bose and was allowed to supervise employees.

17. In June 2011, at her 90-day review, Mr. Kunin told Ms. Vaks that she exceeded all his expectations.

18. In August – September of 2011, Ms. Vaks had two meetings with Mr. Derenberger, Director of Software Engineering and Mr. Kunin's line manager. During these meetings, she described to Mr. Derrenberger her approach in implementing agile methodology in HEPD. He did not appreciate her strong professional opinion and subject matter expertise. Those first two interactions triggered Mr. Derrenberger's long lasting hatred and intolerance towards Ms. Vaks, a woman who dared to express her professional opinion to him, the Director. That was when Mr. Derrenberger became determined to fire Ms. Vaks. He orchestrated and was behind all the events described below, and did not rest until he achieved his goal – her termination.

19. In about August- September 2011, Mr. Derrenberger became aware that Mr. Kunin was using Ms. Vaks to get back to Ms. Smith, the manager of the Test Group, with whom Mr. Kunin had a long history of confrontations. Mr. Kunin's actions exacerbated the enduring conflict with Ms. Smith. To mitigate the bitter conflict with Ms. Smith that affected the entire division, Mr. Kunin was suspended for a month until the conflict with Ms. Smith cools down, but still retained his managerial position.

20. Upon his return, knowing Mr. Kunin's confrontational personality, Mr. Derrenberger deliberately instigated the conflict between Mr. Kunin and Ms. Vaks. Prior to this, they had good professional relationships.

21.   With Mr. Derrenberger's blessing, between October 2011 and April 2012, Mr. Kunin
      relentlessly attacked Ms. Vaks.

22.   In December 2011, Ms. Vaks asked for HR's help in stopping Mr. Kunin's attacks. Bose's
      HR, Mr. Altieri and Mr. Russell, failed to remedy it. The harassment continue until April
      2012, when Mr. Kunin was terminated, but not because of months and years of his abusive
      conduct towards women, but after a male employees complained about his behavior.

23.   On March 28, 2012, after reorganization, Mr. Derrenberger promoted Neer Danielli, a
      36-year-old software development manager, to the Senior Manager of Engineering Services
      to become Mr. Kunin's line manager and Ms. Vaks' second line supervisor.

24.   Mr. Danielli was chosen by Mr. Derrenberger over Jacqueline Smith, 57-year-old woman,
      the Manager of the Test Group (STiG) with more than 10 years of successful relevant
      managerial experience in Bose, who applied for the position, but was turned down by her
      manager Mr. Derrenberger, who instead selected his friend and protégée Mr. Danielli who is
      about 20 years younger with less qualifications and experience.

25.   On April 24, 2012, Mr. Kunin, Ms. Vaks' manager, left Bose after he was given an option to
      leave on his own or be terminated. Bose by its HR allowed Mr. Kunin to secure his next
      employment before resigning.

26.   On April 24, 2012, Mr. Derrenberger, who recommended Mr. Kunin's termination,
      organized and funded Mr. Kunin's farewell party.

27.   As the Ms. Vaks' manager for over one year, Mr. Kunin, had never conducted her annual
      Performance Review nor did he identified her goals or competencies pursuant to Bose'
      policies which was due on April 1, 2012.

6

28.   With Mr. Kunin departure, Mr. Danielli, assumed the role of Ms. Vaks' manager.

29.   On the same April 24, Ms. Vaks met with Jeff Francis, a 31-year-old Product Manager, who
      announced to her that he is taking over her responsibilities of managing the Jira tool. As a
      Product Manager, Mr. Francis had a different chain of command than Ms. Vaks and had no
      authority over her. Prior to that meeting Ms. Vaks and Mr Francis had no business
      interactions and Mr. Francis was not involved in any aspect of Ms. Vaks work in any
      capacity.

30.   Immediately after the meeting Ms. Vaks asked Mr. Danielli, her line manager, to explain
      and clear the situation with Mr. Francis. Although Mr. Danielli promised to address the
      situation, he, instead, encourage Mr. Francis to proceed with his mission to take over MS.
      Vaks' responsibilities without ever informing Ms. Vaks.

31.   During the month of May without any formal or informal announcement from the HEPD's
      management, Mr. Francis continued actively interfering with Ms. Vaks' job. During this
      time, she unsuccessfully attempted getting explanation of his actions from her manager, Mr.
      Danielli, who persistently avoided her.

32.   On May 16, 2016, Mr. Mullett, Mr. Derrenberger pear and Mr. Francis second manager
      advised Mr. Francis to stop inviting Ms. Vaks to the meetings she was responsible for.

33.   Unable to receive any clarity or help from Mr. Danielli, on May 21, 2012, Ms. Vaks
      approached his manager, Mr. Derrenberger, asking for his help in defining her new role and
      a business plan for the transitioning of the critical tool she successfully managed for the
      HEPD.

7

34.    Instead of addressing and fixing the situation created by Mr. Francis, Mr. Miller (Mr. Francis' line manager), and Mr. Danielli, Mr. Derrenberger used this as an opportunity to penalize Ms. Vaks. He opened a complaint against Ms. Vaks with HR explicitly recommending her termination as a conclusion of the investigation.

35.    Feeling ostracized, humiliated and intimidated, on May 22, 2013, Ms. Vaks contacted Bose' HR (Mr. Russell) complaining about the hostility created by Mr. Francis, Mr. Danielli, Mr. Miller and Mr. Derrenberger, uncertainty with her job assignments and management inability to address the problem. She, once again, asked HR for help.

36.    On May 25, 2012, pressed by HR, Mr. Miller, Mr. Francis' manager and one of the 4 male managers involved into seizing Ms. Vaks' job responsibilities, sent an email about changes in his Department. Still Ms. Vaks' managers snubbed to inform her about changes in her job responsibilities.

37.    Impelled by Mr. Derrenberger, not only Bose's HR had not investigated actions of Mr. Francis and coalition of four male managers behind him for "collective mishandling of the transitioning of the tools" (Mr. Derrenberger), but they concluded Ms. Vaks' fault even before they have launched their investigation. Numerous inconsistencies of their witnesses and direct evidence that Ms. Vaks had not personally attacked Mr. Francis did not sway Bose's HR to follow Bose's policies to conduct fair and independent investigation. Instead, they followed Mr. Derrenberger's direction to punish Ms. Vaks for questioning of seizing her job responsibilities. Four months later, after reviewing the investigation of this incident, Mr. Altieri, HR manager, questioned the investigation and disagreed with its findings.

8

38.   Ms. Vaks was the only one who suffered adverse actions: she received the lowest in HEPD

pay raise, poor performance review and was declined in the promotion. Notably, even

contrived by Mr. Derrenberger, inadequate whitewashed HR investigation did not conclude

in Ms. Vaks' termination or recommendation of Performance Improvement Plan (PIP).

39.   By ignoring Ms. Vaks complaint and, instead, punishing her for questioning "old-boy

network", Bose by their HR agents effectively condoned their actions. Bose's failure to

remedy the hostile environment and to conduct independent investigation resulted in

abetting and encouraging of ongoing harassment of Ms. Vaks, which continued until she

was fired six months later for complaining about it to Bose's HR.

40.   On May 28, 2012, Ms. Vaks applied for promotion to the position that Mr. Kunin had held,

SQE Manager, Software Development.

41.   On June 2 and again on June 5, a recruiter in the Human Resources organization contacted

her to schedule an interview for the position.

42.   On June 11, Mr. Danielli, subject of Ms. Vaks complaint to HR, provided Ms. Vaks with her

annual performance review. When Mr. Danielli gave Ms. Vaks her annual review, he had

been her supervisor for just about a month, had not being involved in her previous work and

did not have any "goals and objectives" set up by his predecessor. In writing her review, he

did not apply Bose's performance evaluation policies that were used in conducting

Performance Reviews of other Bose's employees. While acknowledging that he received

positive 360-degree feedback from Ms. Vaks' co-workers who worked closely with her for

the duration of her employment, he had not used it in her Performance Review again in

9

violation of Bose's policies. Bose intentionally withdrew 360-degree peer feedback from Ms. Vaks personnel file and withheld it from MCAD production of documents.

43.    In the review, Mr. Danielli recognized that Ms. Vaks' technical skills and the quality of her work were excellent. At the same time, by giving Ms. Vaks a poor "5" rating, Mr. Danielli unilaterally disqualified her from being considered for promotion while he asked his friend, a younger 34-year-old male friend, from the Product Management Division without previous experience or qualifications, to apply for the job, and hand picked him. Ms. Vaks interview was cancelled. On July 2, 2012, Mr. Danielli announced that he had selected Mr. Lorince for the SQE Manager position.

44.    On June 13, Ms. Vaks requested and received a copy of her Performance Review. For the first time she was able to review it. She felt the review was very unfair, and for the first time she discussed it with both Mr. Danielli and Mr. Derrenberger, telling them she felt it was unfair.

45.    On June 14, Ms. Vaks discussed her poor review and low rating with Tim Russell of HR. Mr. Russell told her that according to Bose policies each employee must have a performance review annually, thus, her performance review had been due on April 1, and that events that happened after that date should not have been addressed in this review.

46.    Mr. Russell also angrily told her that Ms. Vaks did not belong in Bose. He said, who was Ms. Vaks to question Jeff Francis' actions, and that "Mike Derrenberger did not like her and he (Derrenberger) would get rid of her if Ms. Vaks ever complained about anything".

47.    From May forward, more of Ms. Vaks' duties were hostilely taken over by Mr. Francis.

10

48.    From May forward, Ms. Vaks felt that working environment under her new manager, Mr.
       Lorince's, overseen and approved by his friend Mr. Danielli's and Mr. Derrenberger's
       abetted by Bose's HR, became extremely hostile. She felt ostracized, intimidated,
       humiliated and fearful of going to work.

49.    As the result of how she was being treated at work, Ms. Vaks was suffering extreme stress.
       On August 3, 2012, she had a nervous breakdown and was admitted to the hospital. She
       was hospitalized for about a week, and remained at home until returning to work on August
       20, 2012.

50.    On September 25, 2012, in spite of the fact that she was threatened to be terminated if she
       ever complains, but because of increasing hostility, Ms. Vaks had no choice, but to
       complain to Bose' HR about hostile environment and discrimination orchestrated by her
       managers.

51.    Because the harassing conduct of some of her coworkers impacted Ms. Vaks' condition at
       workplace and because her verbal complaint to HR did not stop it, on October 23, 2012, she
       filed a formal complaint of discrimination, harassment and retaliation with Human
       Resources complaining that Mr. Danielli discriminated her and responsible for creating
       hostile environment. On November 5, Ms. Vaks amended her harassment complaint adding
       additional information about discriminatory treatment.

52.    Since one of Ms. Vaks' complaints was discrimination by Performance Evaluation, she
       requested that Mr. Altieri provides her 360 degree peer Evaluation Review. He never did.

11

53.  Between September and November of 2012, Ms. Vaks continued communicating with HR about increasing hostility and difficulties to work. Still Bose's HR refused to intervene and remedy the situation at Ms. Vaks' workplace.

54.  As in May of 2012, Mr. Derrenberger once again interposed himself into what was supposed to be "independent HR investigation". He provided Bose's investigators with a list of people he wanted them to interview.

55.  Ms. Vaks provided Bose's investigators with a short list of people she would like them to interview.

56.  Obeying his instructions, Mr. Altieri and Ms. O'Neill exclusively interviewed Mr. Derrenberger's witnesses, but failed to interview a shortlist of Ms. Vaks' witnesses.

57.  During their investigation, Mr. Altieri concluded that Mr. Francis "stepped into role that was unclear" to Ms. Vaks and "the management allowed for ambiguity to exist" when they decided to seize some of Ms. Vaks' job responsibilities and gave them to Mr. Francis. He also questioned if there were "any action taken to address management behavior". Furthermore, the investigators uncovered multiple inconsistencies in testimonies of the Mr. Derrenberger's witnesses and evidences of orchestrated campaigning against Ms. Vaks by people she alleged created hostile environment. The investigators also recognized that some Bose's Performance Review and promotion policies were violated.

58.  Notwithstanding their findings, on November 19, 2012, Mr. Altieri wrote a report, which concluded Bose's "whitewashed" investigation. It stated that Bose(Altieri and O'Neill) found no evidence to support Ms. Vaks allegations. However, even the rigged report

contained no findings of Ms. Vaks' "misbehaviors" nor provided any justification for her termination. This report was never presented to Ms. Vaks.

59. Following the conclusion of Bose's investigation, Mr. Altieri scheduled a meeting with Ms. Vaks for November 19, 2012 to deliver the results of his investigation. Mr. Derrenberger was not invited to the meeting.

60. Unhappy with Altieri's report, Mr. Derrenberger pressed him to cancel the meeting and to modify the report by adding findings against Ms. Vaks.

61. Following his order, Mr. Altieri rescheduled the meeting for December 3, 2012 due to Ms. Vaks' vacation. This time he invited Mr. Derrenberger and Ms. O'Neill, HR Manager. In his new report, in 2.5 lines, he stated that he found no evidence to support Ms. Vaks' allegations of discrimination and retaliation; in the rest of the report, he condemned Ms. Vaks. This report differed from the investigative report of November 19, 2012 and contained facts and conclusions that were not consequences of the investigation conducted by Bose's HR.

62. During the December 3, 2012 meeting, Mr. Derrenberger directly and openly in front of two HR Managers accused Ms. Vaks of "inferring evil intent" when she filed her discrimination complaint against Mr. Danielli, and that her complaint was very disruptive to the organization and negatively impacted the project she was working on. He said that he "will not tolerate this type of behavior in his organization" if Ms. Vaks does this again. Both HR managers silently watched how Derrenberger attacked Ms. Vaks for filing the discrimination complaint.

63. At the follow up meeting, on December 5, 2012, Ms. Vaks repeatedly asked HR managers, Mr. Altieri and Ms. O'Neill, to provide her with examples of "bad behavior" that she needs

to correct. Unable to answer her question, both HR managers deferred this question to Mr.
Derenberger. Once again, he criticized her for filing the discrimination complaint. This time
he accused Ms. Vaks in implying "criminal intent" on the part of Mr. Danielli by filing a
discrimination complaint against him, which he said is disruptive and "unallowable in his
organization." Once again both HR managers silently watched how Derrenberger attacked
Ms. Vaks for filing the discrimination complaint.

64.     During these two meetings both HR managers have not attempted to stop or interfere with
defendant Derrenberger's repeated and direct attacks against Ms. Vaks for filing the
discrimination complaint. They have never stated her rights to file the discrimination
complaint without being retaliated against.

65.     On December 6, 2012, Mr. Lorince, Ms. Vaks' line manager, resigned from his and returned
to the Product Management division, where he had worked before and continued working
until leaving Bose in 2016. He had never returned to this role.

66.     Unable to provide Ms. Vaks with examples of "bad behavior" except for filing the
discrimination complaint, on December 10, 2012, Mr. Derrenberger sent email to Mr.
Altieri and Ms. O'Neill with a draft of his ultimatum to Ms. Vaks where he specified
conditions under which she would be able to keep her job at Bose. Per his ultimatum, she
was supposed to provide her own list "of past situations where she could've behaved
differently".

67.     Realizing unreasonableness of Mr. Derenberger's demand, Mr. Altieri, provided his version
of "expectations" from Ms. Vaks. He listed five bullets of bad "behaviors" with no specific

14

examples of "misbehavior". None of these "misbehaviors" was a result of Bose's "investigation".

68.    However, Mr. Derrenberger did not accept Mr. Altieri's version. On December 12, 2012, before leaving on three-week vacation, he asked Ms. Vaks to come up with a list of "past interactions where [her] behavior contributed to a negative outcome" and to "recognize situations where your behavior can adversely affect the organization". He mandated Ms. Vaks to deliver this list to him on January 3, 2013 when he returns from vacation. The ultimatum coerced her to surrender her rights to stand up against discrimination and harassment and effectively asked Ms. Vaks to "dig her own grave" or will be fired.

69.    On January 3, 2013, Ms. Vaks responded to Mr. Derrenberger's request saying that the times that her actions caused a negative outcome were: 1) her complaint of discrimination and harassment, 2) questioning the organized seizing of her job responsibilities by Mr. Francis and four male managers, and 3) when she applied for promotion. Ms. Vaks also stated she had a legal right and responsibility to report any instances of discrimination. Mr. Derrenberger forwarded her response to both defendants, Mr. Altieri and Ms. O'Neill.

70.    On the very next day, on January 4, 2013, obeying Mr. Derrenberger's recommendation, 24 business days after she filed her complaint, Bose Corporation by their agents Mr. Altieri and Ms. O'Neill executed Ms. Vaks' termination. She was 56 years old.

71.    On December, 20, 2012, Ms. Vaks requested HR to provide her personnel record. After several reminders, she finally received her record on January, 3 2013. The 360-degree peer review - part of the Performance Evaluation - was removed from the personnel record.

72.     In April 2013, Ms. Vaks filed an MCAD charge alleging that Bose Corporation and two
        engineering managers, Derrenberger and Danielli, discriminated and retaliated against her.

73.     Both Mr. Altieri and Ms. O'Neill were mentioned in Ms. Vaks MCAD charge as Bose's
        investigators of Ms. Vaks internal complaint, and numerous times during MCAD
        investigation including Bose's own Position Statement and Exhibits.

74.     Both defendants received a notice of the MCAD charge. Both of them participated in
        MCAD proceedings by providing documents in response to MCAD production request.

75.     Not only both Defendants actively participated in the conciliation of the MCAD charge, but
        they also mislead and manipulated the MCAD investigation when they failed to provide and
        then withheld *at least* two critical documents they have in their procession - *direct evidence*
        of discrimination and retaliation and part of her *personnel record* - from the MCAD
        investigators.

76.     On July 24, 2014, Ms. Vaks filed a response to the Respondents production alleging that
        Respondents intentionally withheld "at least two documents" that were in possession of
        Human Resources. One of them was "360 degree review provided by her colleagues as part
        of the Performance Review" that was withdrew from her personnel file. The other missing
        document was "a direct evidence of retaliation" - "Peter Altieri's notes of the December 5th,
        2012 meeting. Both documents were critical to Complainant's Charge and could provide
        further proof of Respondents' discriminatory and retaliatory conduct". At that meeting, Mr.
        Derrenberger accused Ms. Vaks of implying "criminal intent" on the part of Mr. Danielli by
        filing a discrimination complaint against him, which he said is disruptive and "unallowable
        in his organization."

77. Defendants were not prejudiced by their formal absence from the MCAD heading, because the MCAD took no action to remedy Ms. Vaks complaint.

78. Both defendants were represented by Bose' legal counsel.

## CAUSES OF ACTIONS

### COUNT I – Gender Discrimination in Violation of M.G.L. c. 151B, §§ 1, 4 et seq.

79. Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

80. The Defendants have discriminated Ms. Vaks and subjected her to disparate treatment because of her gender, which has been severe, pervasive and offensive.

81. The Defendants had actual or constructive knowledge of ongoing discrimination and harassment.

82. The Defendants failed to take appropriate remedial actions to prevent or correct further discrimination and harassment of Ms. Vaks.

83. As a result of the Defendant's' conduct, Ms. Vaks has suffered damages.

### COUNT II – Age Discrimination in Violation of M.G.L. c. 151B, §§ 1, 4 et seq.

84. Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

85. The Defendants have discriminated Ms. Vaks and subjected her to disparate treatment because of her age, which has been severe, pervasive and offensive.

86. The Defendants had actual or constructive knowledge of ongoing discrimination and harassment.

87. The Defendants failed to take appropriate remedial actions to prevent or correct further discrimination and harassment of Ms. Vaks.

88. As a result of the Defendants' conduct, Ms. Vaks has suffered damages.

### COUNT III – Hostile Environment in Violation of M.G.L. c. 151B, §§ 1, 4 et seq.

89. Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

90. The Defendants have created a hostile work environment and subjected the Plaintiff to disparate treatment because of her gender and age, which has been severe, pervasive and offensive.

91. The Defendants had actual or constructive knowledge of ongoing hostility and harassment.

92. The Defendants failed to take appropriate remedial actions to prevent or correct further hostility and harassment of Ms. Vaks.

93. As a result of the Defendants' conduct, Ms. Vaks has suffered damages.

### COUNT IV – Retaliation in Violation of M.G.L. c. 151B §§ 4(4) & 4(4A)

94. Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

95. Ms. Vaks was subject to adverse actions such as termination in retaliation by Defendants when she exercised her rights under the chapter M.G.L. c. 151B §4(1) complaining about the discrimination and hostile environment.

96.  The Defendants' actions were deliberate, intentional, malicious, or were recklessly indifferent to Ms. Vaks' rights.

97.  The Defendants' knew that their actions were illegal.

98.  The retaliation endured by Ms. Vaks would dissuade a reasonable employee from making complaints of discrimination and harassment.

99.  As a result of the Defendants' conduct, Ms. Vaks has suffered damages.

**COUNT V – Interference with Ms. Vaks rights in violation of 151B, section 4(4A)**

100.  Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

101.  Defendants had the authority or duty to act on behalf employer.

102.  Defendants interfered with Ms. Vaks rights in a manner that was in deliberate disregard of those rights.

103.  Defendants knew that their illegal, outrageous and extreme conduct, and that of their employees, would result in emotional distress and mental anguish.

104.  As a result of the Defendants' conduct, Ms. Vaks has suffered damages.

**COUNT VI – Aiding and Abetting in violation of 151B, section 4(5)**

105.  Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

106.  Defendants had the authority or duty to act as the employer;

107.  Defendants intended and deliberately discriminated Ms. Vaks in a manner that was in disregard of her legal rights. They knew that their supporting role designed to deprive Ms. Vaks of her rights guaranteed under G. L. c. 151B.

108.   As a result of the Defendants' conduct, Ms. Vaks has suffered damages.

**COUNT VII – Discrimination under Title VII, 42 U.S.C. 2000e against Defendant Bose**

109.   Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

110.   The Defendants have discriminated Ms. Vaks and subjected her to disparate treatment because of her gender, which has been severe, pervasive and offensive.

111.   The Defendants had actual or constructive knowledge of ongoing discrimination and harassment.

112.   The Defendants failed to take appropriate remedial actions to prevent or correct further discrimination and harassment of Ms. Vaks.

113.   As a result of the Defendants conduct, Ms. Vaks has suffered damages.

**COUNT VIII – Hostile environment under Title VII, 42 U.S.C. 2000e, *et seq* against Defendant Bose**

114.   Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

115.   The Defendants have created a hostile work environment and subjected the Plaintiff to disparate treatment because of her gender, which has been severe, pervasive and offensive.

116.   The Defendants had actual or constructive knowledge of ongoing hostility and harassment.

117.   The Defendants failed to take appropriate remedial actions to prevent or correct further hostility and harassment of Ms. Vaks.

118.   As a result of the Defendants' conduct, Ms. Vaks has suffered damages.

**COUNT IX – Retaliation under Title VII, 42 U.S.C. 2000e-2(a), *et seq* against Defendant Bose**

20

119.   Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

120.   Ms. Vaks was subject to adverse actions such as termination in retaliation by Defendants when she exercised her rights under the chapter M.G.L. c. 151B §4(1) complaining about the discrimination and hostile environment.

121.   The Defendants' actions were deliberate, intentional, malicious, or were recklessly indifferent to Ms. Vaks' rights.

122.   The Defendants' knew that their actions were illegal.

123.   The retaliation endured by Ms. Vaks would dissuade a reasonable employee from making complaints of discrimination and harassment.

124.   As a result of the Defendants' conduct, Ms. Vaks has suffered damages.

## COUNT X – Discrimination and Retaliation pursuant to ADEA against Defendant Bose

125.   Ms. Vaks incorporates all allegations in this document with the same force and effect as if set forth herein.

126.    Defendants' conduct in regard to the harassment that Ms. Vaks suffered in a hostile environment, and her termination based on age discrimination and retaliation constitutes unlawful discrimination on account of her age in violation of the ADEA.

127.    As a result of the intentional violations of the ADEA, Plaintiff has suffered damages including lost present and future wages and lost benefits and other monetary losses.

## COUNT XI - Negligent Supervision of Employees

128.   Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

129.    Defendants had responsibility to monitor Ms. Vaks condition of work.

130.    Defendants failed to properly supervise Ms. Vaks.

131.    Ms. Vaks has suffered damages, because of the Defendants' inattention or carelessness.

132.    The injury due to Defendants' negligence have been foreseeable.

### COUNT XII - Violation of MGL C. 149 s. 52C against defendants Bose, Altieri, O'Neill

133.    Ms. Vaks hereby incorporates all allegations in this document with the same force and effect as if set forth herein.

134.    Defendants had responsibility to main Ms. Vaks personnel record.

135.    Defendants deliberately withheld critical documents from Ms. Vaks personnel record.

136.    As a result of the intentional violations of the statute, Plaintiff has suffered damages.

*The Plaintiff, Rimma Vaks, demands a jury trial on all triable issues.*

WHEREFORE, the Plaintiff, Rimma Vaks, respectfully requests that this Court grant the following relief:

1.    Compensatory damages in whatever amount she is found to be entitled;
2.    Exemplary and punitive damages in whatever amount she is found to be entitled;
3.    A judgment to make Plaintiff whole by providing her appropriate lost earnings and benefits, and other affirmative relief.
4.    An award of interest, costs and reasonable attorney fees, and,
5.    Grant such other relief as this Court deems just and proper.

Dated: 11th  October, 2016                     Respectfully submitted,

                                               /s/ Rimma Vaks

                                               Rimma Vaks, *Pro Se*,
                                               103 Puritan Lane,
                                               Swampscott, MA 01907
                                               781-581-6994

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of this document on all Defendants to their attorney Todd Torres, at Ogletree, Deakins, Nash, Smoak & Stewart, P.C. at One Boston Place, Suite 3220, Boston, Massachusetts on October 11, 2016 by hand delivery.

/s/Rimma Vaks
Rimma Vaks